IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL AARON DAVIS,

                        Petitioner,

            vs.

GARY SWARTHOUT,[1] Warden,
California State Prison, Solano,

                        Respondent.

No. 2:09-cv-01531-JKS

MEMORANDUM DECISION

        Michael Aaron Davis, a state prisoner appearing *pro se*, filed a Petition for Habeas

Corpus under 28 U.S.C. § 2254.  Davis is currently in the custody of the California Department

of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.

Respondent has answered, and Davis has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

        Following a jury trial in January 2006 Davis was convicted in the Sacramento County

Superior Court of attempted murder, Cal. Penal Code §§ 664, 187, with firearm enhancements,

Cal. Penal Code §§ 12022.53(b)-(d).  The trial court sentenced Davis to an indeterminate prison

term of twenty-five years to life, plus seven years for the firearm enhancements.  The California

Court of Appeal affirmed Davis's conviction, but modified his sentence, in a partially published

---

        [1] Gary Swarthout, Warden, California State Prison, Solano, is substituted for Ken Clark,
Warden, California Substance Abuse Treatment Facility and State Prison, Corcoran.  Fed. R. Civ.
P. 25(d).

and partially unpublished opinion,[2] and the California Supreme Court denied review on March 11, 2009.  Davis timely filed his Petition for relief in this Court on April 20, 2009.

The California Court of Appeal summarized the factual basis for Davis's conviction as follows:

> Defendant Javier Munoz made and received several calls on his mobile telephone before and after he and several other men, including defendant Michael Davis, Preston Baldwin and John Hernandez, drove to the Meadowview Light Rail station in two SUVs to retaliate against "some brothers" who had "jumped" Hernandez's nephews.  Instead, the men trapped a car driven by Demario Chappell, who had nothing to do with "jumping" Hernandez's nephews, and fired pistols at the car.  Although a number of nine-millimeter and .45-caliber shots were fired, only one bullet struck Chappell.  The bullet lodged in Chappell's brain, but miraculously did not kill him.
>
> \* \* \* \*
>
> Chappell drove to the Meadowview station in his white Chevrolet Corsica with his cousin Marquis Landers as a passenger, in order to pick up Arielle Jones, Landers's friend.  She got in the back seat and Chappell started to drive her home.  It was about 9:30.
>
> Although the various witness accounts were not entirely consistent, a white or silver SUV cut Chappell off, requiring him to brake hard, and inducing him to make an unfriendly comment to the SUV's driver.  Munoz's green SUV trapped Chappell's car.  A number of men got out of the SUVs, and when Chappell saw a man pointing a gun at him, he drove off, hitting the second SUV in his effort to get away.  After he blacked out he stopped the car and then Jones drove him to the hospital.  Landers testified one shooter got out of each SUV, but later he testified he did not know this, and he had so told an officer before trial.
>
> Two passersby heard someone in the green SUV yell "Bitch, ass, Niga" as it left; one heard laughter and described this yell as "Celebrating, sort of."
>
> Many shots had been fired at Chappell's car; four 9 millimeter and seven .45-caliber shell casings were found.  Two 9 millimeter bullets were found in the car, and a .45-caliber bullet was extracted from Chappell's brain.[3]

---

[2] *People v. Davis*, 86 Cal. Rptr. 3d 55 (Ct. App. 2008).

[3] *Davis*, 86 Cal. Rptr. 3d at 58-59.

## II.  ISSUES PRESENTED/DEFENSES

In his Petition, Davis raises seven grounds for relief:  (1) that the trial court erroneously allowed into evidence wiretap recordings of conversations that exceeded the scope of the warrant,  i.e., concerning non-targeted offenses; (2A) the trial court erroneously allowed admission of wiretap recordings into evidence that had not been properly maintained under seal; (2B) as an alternative to Ground 2A, ineffective assistance of counsel for failing to require that the prosecution establish that the tape recordings had been properly sealed; (3) the trial court erroneously allowed admission of Davis's conversations with a co-defendant into evidence in which Davis allegedly threatened the victim; (4A) the introduction of evidence of Davis's prior conviction for shooting at two thirteen-year-old girls constituted prosecutorial misconduct; (4B) as an alternative to 4A, trial counsel's failure to object to evidence of Davis's prior conviction for shooting at the girls constituted ineffective assistance of counsel; (5A) the trial court failed to *sua sponte* instruct on the limited admissibility of the bad act evidence (CALJIC 2.50); (5B) as an alternative to 5A, trial counsel's failure to request a limiting instruction constituted ineffective assistance of counsel; (6) insufficiency of the evidence to support the firearm enhancement; and (7) the trial court erred in giving a "kill zone" instruction (CALJIC 8.66.1).  Respondent asserts that Davis's first and both parts of his second grounds are procedurally barred, and both parts of his fourth ground are unexhausted and procedurally barred.  Respondent raises no other affirmative defense.[4]

---

[4] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error

---

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition
for obtaining habeas corpus from a federal court, a state prisoner must show that the
state court's ruling on the claim being presented in federal court was so lacking in
justification that there was an error well understood and comprehended in existing
law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state

court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without

explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[17]

IV.  DISCUSSION

A.      **Procedural Default**

The California Court of Appeal held that Davis forfeited review of the claims related to

admission of the wiretap evidence, the first ground and part A of the second ground, because

---

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297
F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining
"how federal courts in habeas proceedings are to determine whether an unexplained order . . .
rests primarily on federal law," and noting that federal courts must start by examining "the last
reasoned opinion on the claim . . . .").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting
a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest
upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider
the issue has recognized, determining whether a states court's decision resulted from an
unreasonable legal or factual conclusion does not require that there be an opinion from the state
court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition
was not entitled to § 2254(d) deference).

Davis had not made a timely and proper objection in the trial court.[18]  Respondent contends that

this constitutes an adequate, independent state procedural ground that bars review in this Court.[19]

    Federal courts "will not review a question of federal law decided by a state court if the

decision of that court rests on a state law ground that is independent of the federal question and

adequate to support the judgment."[20]  This Court may not reach the merits of procedurally

defaulted claims, that is, claims "in which the petitioner failed to follow applicable state

procedural rules in raising the claims . . . ."[21]  "[I]n order to constitute adequate and independent

grounds sufficient to support a finding of procedural default, a state rule must be clear,

consistently applied, and well established at the time of the petitioner's purported default."[22]  A

discretionary state procedural rule can be firmly established and regularly followed, so as to bar

federal habeas review, even if the appropriate exercise of discretion may permit consideration of

a federal claim in some cases but not others.[23]

    The California contemporaneous objection rule is "clear, consistently applied, and well-

established" where, as here, a party fails to make a proper objection to the admission of

---

    [18] *People v. Davis*, 86 Cal. Rptr. 3d 55, 61-62 (2008) (citing Cal. Evid. Code § 353(a); *People v. Smith*, 150 P.3d 1224 (Cal. 2007)).

    [19] The facts concerning the wiretap evidence are well known to the parties and are set forth in detail in the published decision of the California Court of Appeal.  Consequently, because they are not necessary to the decision of this Court, those facts are not repeated here.

    [20] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

    [21] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992) (citing *Murray v. Carrier*, 477 U.S. 478 (1986)).

    [22] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotations marks and citation omitted).

    [23] *Walker v. Martin*, 131 S. Ct. 1120, 1128 (2011); *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009).

evidence.[24]  The rule is therefore operative in the case at bar as an "adequate and independent" state procedural bar.[25]  Moreover, the California rule is entirely consistent with federal law as established by the United States Supreme Court, which also requires that an objection state the specific ground or grounds on which it is based.[26]

This Court agrees with Respondent that, because Davis's first ground and part A of his second ground were defaulted in state court on an adequate and independent state ground, they will not be considered in federal habeas proceedings unless Davis can demonstrate cause for the default and actual prejudice.[27]  To prove a fundamental miscarriage of justice, Davis must show that a constitutional violation probably resulted in his conviction despite his actual innocence.[28]  Although at the gateway stage the petitioner need not establish his innocence as an "absolute certainty," the petitioner must demonstrate that more likely than not, no reasonable juror could find him guilty beyond a reasonable doubt.[29]

---

[24] *Melendez v. Pliler,* 288 F.3d 1120, 1124-25 (9th Cir. 2002).

[25] *See Collier v. Bayer,* 408 F.3d 1279, 1283 (9th Cir. 2005).

[26] Fed. R. Evid. 103(a)(1); *see generally Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (citations omitted)); *Peretz v. United States*, 501 U.S. 923, 936-37 (1991) (cases cited therein).

[27] *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[28] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[29] *House v. Bell*, 547 U.S. 518, 538 (2006).

If a petitioner has procedurally defaulted on a claim, a federal court may nonetheless consider the claim if he shows: (1) good cause for his failure to exhaust the claim; and (2) prejudice from the purported constitutional violation; or (3) demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Sawyer v. Whitley,* 505 U.S. 333, 339–40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). An objective factor outside of a petitioner's control (e.g., ineffective assistance of counsel or a basis for the claim that was previously unavailable) could constitute cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The petitioner can meet the prejudice prong if he demonstrates "that the errors . . . worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis,* 874 F.2d 599, 603 (9th Cir.1989) (citing *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). A petitioner can demonstrate a fundamental miscarriage of justice by "establish[ing] that under the probative evidence he has a colorable claim of factual innocence." *Sawyer,* 505 U.S. at 339, 112 S.Ct. 2514 (quotation marks omitted).[30]

It is important to note that, in this context, "'actual innocence' means factual innocence, not mere legal insufficiency."[31] To make the requisite showing of actual innocence, Davis must produce "new *reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."[32] Davis has not met this standard. Thus, Davis is procedurally barred from raising his first ground and subpart A of his second ground in this proceeding.

## B.    Evidentiary Hearing

Davis contends in his Traverse that an evidentiary hearing is necessary to establish the validity of his first and second grounds. The Supreme Court made clear in *Pinholster* that

---

[30] *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011) (alterations in original).

[31] *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

[32] *Schlup*, 513 U.S. at 324, 327 (emphasis added).

9

"review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."[33]  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."[34]  "If the state-court decision 'identifies the correct governing legal principle' in effect at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'"[35]  As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."[36]  Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2),[37] which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>     (A) the claim relies on—
>         (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

---

[33] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[34] *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*,131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.").

[35] *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

[36] *Id.*

[37] *Id.* at 1400-01.

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Davis's request in this case does not meet that standard. Because Davis's claims, that the wiretap evidence was improperly admitted, are procedurally barred from review in this Court, there is no factual conflict to resolve that would require this Court to hold an evidentiary hearing. With respect to subpart B of his second ground, the ineffective assistance of counsel claim, as noted in the discussion of that claim in subpart D, below, Davis has not presented a factual basis sufficient to support his claim. The Court of Appeals, also noting the lack of a sufficient factual basis, indicated Davis would have to seek a writ of habeas corpus to develop the necessary facts.[38] Davis did not seek habeas relief in the state courts. Therefore, it does not appear from the record that the state courts precluded Davis from developing the factual basis for his claim.[39] Consequently, Davis's request for an evidentiary hearing will be denied.

## C.    Exhaustion

Respondent contends that, because Davis did not include his fourth ground in his petition for review in the California Supreme Court, he has not properly exhausted his available state-court remedies. This Court may not consider claims that have not been fairly presented to the

---

[38] *People v. Davis*, 86 Cal. Rptr. 3d 55, 65-66 (2008).

[39] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

state courts.[40]  Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[41]  A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle; and (3) by providing the proper factual and legal basis for the claim.[42]

Davis contends that because his appellate brief filed in the Court of Appeal was attached to his petition for review before the California Supreme Court, he properly presented his claim to the California Supreme Court.  This Court disagrees.  To fairly present his claim to the California Supreme Court, it must be clearly identified in his petition or brief.[43]  "A claim is not fairly presented if the state court must read beyond a petition or a brief . . . in order to find material that alerts to a presence of a federal claim."[44]  Simply attaching the appellate brief filed in the Court of Appeal and referring to "for the reasons stated" in the brief, is insufficient.[45]  Davis has failed to properly exhaust his state-court remedies with respect to his fourth ground.  Consequently, this Court is precluded from granting Davis relief on the basis of that claim.

---

[40] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[41] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[42] *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir. 1999).

[43] *Wooten v. Kirkland*, 540 F.3d 1019, 1026 (2008) (citing *Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir. 2000) (holding that an isolated reference in the conclusion of a brief was insufficient to fairly bring an issue to the attention of the court)).

[44] *Id.* at 1025 (quoting *Baldwin*, 551 U.S. at 32) (internal quotation marks omitted).

[45] *See id.* at 1022, 1025-26.

**D.     Merits**

Ground 2B:  Ineffective Assistance of Counsel

Davis contends that in failing to properly object to the admission of the wiretap evidence,

trial counsel failed to provide him with the effective assistance of counsel.  The Court of Appeal

rejected Davis's argument holding:

> Defendants claim their trial attorneys were incompetent because they failed to preserve these grounds.  In order to prevail on such a claim, a defendant must show trial counsel acted or failed to act in a manner below the standard of care, and that that mistake caused prejudice, that it is reasonably probable a more favorable result would have been obtained absent the mistake. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–218, 233 Cal.Rptr. 404, 729 P.2d 839.)
>
> "Because the decision whether to object is inherently tactical, the failure to object to evidence will seldom establish incompetence." (*People v. Freeman* (1994) 8 Cal.4th 450, 490–491, 34 Cal.Rptr.2d 558, 882 P.2d 249; see *People v. Frierson* (1979) 25 Cal.3d 142, 158, 158 Cal.Rptr. 281, 599 P.2d 587.)  In a case discussing the effect of a failure to move to suppress, the California Supreme Court said:
>
> > "'Because the legality of the search was never challenged or litigated, facts necessary to a determination of that issue are lacking.' [Citation.]  . . .  We have repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged [,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.]  A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267, 62 Cal.Rptr.2d 437, 933 P.2d 1134.)
>
> Defendants cannot show prejudice because they cannot show that timely objections would have resulted in the exclusion of the evidence.  As for the sealing issue, Davis claims trial counsel could have no tactical reason not to object, asserting that if an objection had been made it would have succeeded.  But this overlooks the fact that counsel may have known there was no impropriety regarding sealing. Absent an objection and hearing in the trial court, we will not assume the *illegality* of the sealing procedures.
>
> Nor will we assume the *materiality* of any claimed transgressions. (See *U.S. v. Crumpton* (D.Colo.1999) 54 F.Supp.2d 986, 1003 ["The defendants must not only demonstrate a deviation from the requirements of the statute, but this deviation must be substantial"].)  Not all wiretap statute violations require suppression, only those that frustrate a central purpose of the statutory scheme.  (*United States v. Donovan* (1977) 429 U.S. 413, 432–440, 97 S.Ct. 658, 670–674, 50 L.Ed.2d 652, 670–675;

*Jackson, supra,* 129 Cal.App.4th at pp. 149–152, 28 Cal.Rptr.3d 136; see *People v. Otto* (1992) 2 Cal.4th 1088, 1114, 9 Cal.Rptr.2d 596, 831 P.2d 1178.)[46]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Davis must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[47]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."[48]  Davis must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[49]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[50]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[51]

---

[46] *People v. Davis*, 86 Cal. Rptr. 3d 55, 65-66 (2008)*.*

[47] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[48] *Id*.

[49] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985) (citing *Strickland*, 466 U.S. at 694).

[50] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing *Strickland*, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[51] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[52]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[53]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[54]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[55]

---

[52] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[53] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[54] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

[55] *Id.* at 786.

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[56] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial . . . ."[57]

Davis bears the burden of proving that counsel's trial strategy was deficient. "[Davis] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[58] "[Davis] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[59] "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[60] "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[61]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional

---

[56] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[57] *Id.*

[58] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[59] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

[60] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[61] *Strickland*, 466 U.S. at 681.

judgment."[62]  The court must then consider those acts or omissions against "prevailing

professional norms."[63]  Even then, "counsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."[64]

Davis has not met this heavy burden.  He has shown no evidence indicating that counsel

was unreasonable or ineffective for selecting his chosen trial strategy.  He presented no alternate

attorney's determination challenging counsel's failure to challenge the introduction of the

wiretap evidence on the grounds that the transcripts had not been properly sealed.  He has not

quoted any "[p]revailing norms of practice as reflected in American Bar Association standards

and the like" indicating that counsel acted outside these norms.[65]  Davis is not entitled to relief

under subpart B of his second ground.

Ground 3:  Recorded Conversations with Co-defendant

Davis contends that the prejudicial effect of a recording of a conversation between Davis

and a co-defendant, Munoz, outweighed its probative value and should not have been allowed

into evidence.  As recited by the California Court of Appeal in the unpublished part of its

opinion, the challenged conversation went as follows:

Track 20, June 30, 7:41 p.m.
Munoz called Davis and said "Paul" called him for the .45, caliber pistol, but Davis
told him not to sell it to him, apparently because he already owned Davis money,

---

[62] *Id*. at 690.

[63] *Id*.

[64] *Id*.

[65] *Id.* at 688.

then they discussed anticipated retaliation from the incident described in track 17, involving "Gabino," as follows:

> "MD:  No . . . pistols is for sale right now anyway, 'cause Jim and them just laid Jay and them down.

> "JM:  What happened?

> "MD:  Jim an' dem?  You head what Jim an' dem did?

> "JM:  Wha . . . what happened?

> "MD:  At the Montecarlo?

> "JM:  Oh yeah, they beat up . . . Gabino and them.

> "MD:  Yeah, cuz.  You know they goin' call us.

> "JM:  Yeah. Fo' sho' cousin. . . .

> "MD:  Fo' sho' I' gonna come by.  Man these bitch ass niggas down the street, blood, kept muggin . . . I went down there with . . .

> "JM:  Who?

> "MD:  Down the street from my house, blood.  Right there on Whitman, where the scraps live or whatever the fuck they is, their [fellow countrymen].

> "JM:  At the corner?

> "MD:  Yeah, I hit the block, dude all mugging hell o' hard . . . and then . . . there's like five o' them so I come get the 40 [.40 caliber pistol].  Nigga, I go down there, like Nigga, what the fuck you fucking mugging for nigga.  And then . . . the other due is over there like king of smiling, I'm like 'Fuck you, nigga!  Fuck smell A [*sic*, Los Angeles?]!  I'll smoke all you . . . bitch ass niggas!' . . . I was fittin' . . . to bust this nigga bro!  I swear, I didn't even have no bullets though.  I put it to that nigga's cranium."[66]

The California Court of Appeal rejected Davis's arguments, holding:

### 3.  Davis's Claims on Appeal

Davis contends generally that the trial court abused its discretion in admitting Tracks 19 and 20, but discusses only the portion of track 20 in which he discussed the incident with people on the street.  He claims this was bad character evidence and unduly prejudicial.  In his view its only purpose was to paint him as a violence-prone man.  Further, it was prejudicial because "The enthusiasm with which [Davis] recorded his terrorizing people on his street with guns had a very strong tendency to persuade jurors that the community would be safer if [Davis] was convicted in this case of the greatest offense available."  He alternately characterizes this as a due process violation.

Evidence Code section 1101, subdivision (b) allows proof of what would otherwise be inadmissible character evidence when the evidence is introduced against a person to prove "some fact (such as motive, opportunity, intent, preparation, plan,

---

[66] Lodged Doc. 4 at 54-55.

knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act." "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Tracks 19 and 20 taken together show Davis's relationship with Munoz and Hernandez, his ready access to guns, and his willingness to use them. Davis impliedly concedes as much, including as to the references on Track 20 to a .45-caliber gun, the type of gun used to shoot at Chappell's car. Contrary to his apparent view, that reference was not "cumulative" to other evidence about such a gun. And even as to the portion of Track 20 referring to a .40-caliber gun, which was purportedly used by Davis (albeit without bullets) to threaten Davis's neighbors, Davis concedes the prosecutor used it to cross-examine him. Davis admitted owning "matching" Glocks, a .40-caliber gun was in the house where he was found hiding, and after the shooting he and Munoz discussed trading a nine-millimeter for a .40-caliber gun, therefore the reference to the latter on Track 20 was relevant.

Davis's defense was that he did not intend to shoot anybody at the station, but when shooting broke out, he fired his gun, partly because he had had a prior traumatic experience of being shot. Track 20 effectively challenged his story, because it shows Davis was willing, if not eager, to use firearms when he perceived himself to be slighted. It thus shed light on his intention and tended to undermine his claim of self-defense.

The challenged portion of Track 20 was not prejudicial. "'The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors.'" (*People v. Zapien* (1993) 4 Cal.4th 929, 958.) The evidence was not inflammatory when compared to the facts of the charged shooting, did not take much trial time to introduce, was not remote, and was not confusing, therefore there was no Evidence Code section 352 error. (*Ibid.*; see *People v. Harris* (1998) 60 Cal.App.4th 727, 736-740 (*Harris*).) Assuming, as stated above, that the claim has been preserved, the trial court did not abuse its discretion by failing to exclude this portion of Track 20.

Defendant points to federal cases holding that whether or not the admission of evidence complies with state law, its admission violates due process if there is no rational permissible inference to be drawn therefrom. (See *Jamal v. Van de Kamp* (9th Cir. 1991) 926 F.2d 918, 920.) Here, the inferences from the evidence were rational and permissible.[67]

---

[67] Lodged Doc. 4 at 56-58.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[68]  "The introduction of unfairly prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."[69]  "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[70]  In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution."[71]  The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[72]  In this context, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," limiting them to specific guarantees enumerated in the bill of rights.[73]  For example, the Supreme Court has barred the introduction of evidence in state court criminal proceedings that violated the Fourth Amendment

---

[68] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[69] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998) (citations omitted).

[70] *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983); *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[71] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[72] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[73] *McGuire*, 502 U.S. at 73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

(search and seizure),[74] Fifth Amendment (confessions),[75] Sixth Amendment (Confrontation Clause),[76] and Sixth Amendment (right to counsel).[77]

Federal Rule of Evidence 404, as does its counterpart, California Evidence Code § 1101, generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge.  No preliminary showing is necessary before such evidence may be introduced for a proper purpose.[78]  If offered for such a proper purpose, the evidence is subject only to general strictures limiting admissibility such as Federal Rules of Evidence 402 and 403.[79]

There is a split among the circuit courts as to the proper standard of review, de novo or abuse of discretion, to be applied to the question of whether evidence falls within the scope of Rule 404(b).  The Ninth Circuit applies a de novo standard,[80] while the Second Circuit applies an abuse of discretion standard.[81]  California employs an abuse of discretion standard on appellate

---

[74] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[75] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[76] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[77] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[78] *Huddleston v. United States*, 485 U.S. 681, 687-88 (1988) (citing Fed. R. Evid. 404).

[79] *Id.* at 688; *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (noting that once it has been established that the evidence at issue serves an admissible purpose, such as establishing motive or intent, the only conditions justifying the exclusion of the evidence are those set forth in Rule 403); Fed. R. Evid. 402, 403.

[80] *See United States v. Montgomery*, 384 F.3d 1050, 1061 (9th Cir. 2004).

[81] *United States v. Paulino*, 445 F.3d 211, 221 (2d Cir. 2006).

review of § 1101(b) rulings.[82]  The Supreme Court has held that in ruling on whether evidence is properly admitted under Rule 404(b) the court must consider whether:  (1) the prior acts evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) whether the court, if requested, administered an appropriate limiting instruction.[83]  Under California Evidence Code § 1102(b), as "circumstantial evidence, its admissibility depends upon three principal factors: (1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence."[84]

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352, permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against

---

[82] *People v. Daniels*, 802 P.2d 906, 924 (Cal. 1991); *see People v. Kipp*, 956 P.2d 1169, 1181 (Cal. 1998) (admissibility ruling under section 1101(b) is essentially a determination of relevance that is reviewed for abuse of discretion).  Given the split between the circuits and the fact that the Supreme Court has not expressly ruled on this question, it cannot be said that the use of an abuse of discretion standard is an unreasonable application of federal law as established by the Supreme Court.  *Kessee v. Mendoza-Powers*, 574 F.3d 675, 679 (9th Cir. 2009).

[83] *Huddleston*, 485 U.S. at 691-92.

[84] *People v. Thompson*, 611 P.2d 883, 888 (Cal. 1980) (citations omitted).

admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[85]  California employs a similar rule.[86]

This Court notes that, although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[87] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[88]  Consequently, this Court cannot say that the decision of the California Court of Appeal was  "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"[89]  Davis is not entitled to relief under his third ground.

<u>Ground 5A:  Failure to Give Bad Act Limiting Instruction</u>

Davis argues that the failure of the trial court to instruct the jury *sua sponte* not to use his prior bad acts to find that he had a propensity to commit crimes violated his rights under the Fifth and Sixth Amendments.

---

[85] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).

[86] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("[W]e review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

[87] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[88] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing § 2254(d)(1))).

[89] 28 U.S.C. § 2254(d).

The California Court of Appeal rejected Davis's argument, holding:

> Defendants claim the trial court should have instructed the jury on the limited use of prior acts evidence. (CALJIC 2.50.)  Munoz does not clearly identify what evidence he is concerned about, but it appears to be references on the wiretaps to guns and drugs, used to show Munoz's relationship to Hernandez and Davis. Davis, too, is not crystal clear.  He argues the record is "replete with appellant's criminal/anti-social behavior as a drug dealer, a gun trafficker [record citations], and as someone who terrorizes old ladies, young girls, and his neighbors with a gun.  The prosecution was trying to show that because appellant was a miscreant, he must have committed the charged attempted murder."
>
> We note that the evidence Davis held a gun on a so-called "old lad[y]," was misdemeanor impeachment evidence and the jury was instructed on it limited purpose.
>
> Defendants claim the trial had az duty to give a limiting instruction on its own motion, but this is not so.  "Although the trial court may in an appropriate case instruct *sua sponte* on the limited admissibility of evidence of past criminal conduct, we have consistently held that it is under no duty to do so." (*People v. Collie* (1981) 30 Cal.3d 43, 63.)  Admittedly, 'There may be an occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose.  In such a setting, the evidence might be so obviously important to the case that *sua sponte* instruction would be needed to protect the defendant from his counsel's inadvertence.  But we hold that in this case, and in general, the trial court is under no duty to instruct *sua sponte* on the limited admissibility of evidence of past criminal conduct." (*Id.* at p. 64;  see *People v. Hinton* (2006) 37 Cal.4th 839, 875-76).
>
> As to both defendants any prior acts evidence was not so "dominant" or prejudicial as to require a limiting instruction absent request.  As we have explained, the evidence was not introduced or used to show that defendants had a general propensity for violence or a bad character.[90]

To support a collateral attack on the judgment the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"[91]  Where, as here, the defect is the failure to give an instruction, the burden is even heavier because an omitted

---

[90] Lodged Doc. 4 at 61-62 (alterations in original).

[91] *Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973).

or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law.[92] "It is well-settled that where no limiting instruction is requested concerning evidence of other criminal acts, the failure of the trial court to give such an instruction *sua sponte* is not reversible error."[93]   This Court notes that, to the extent the Supreme Court has addressed the issue, it has expressly reserved consideration of whether the admission of prior bad acts under state law to show propensity constitutes a due process violation.[94]   Having failed to raise a question of federal constitutional dimension, Davis is not entitled to relief under part A of his fifth ground.

Ground 5B:  Counsel Ineffective for Failure to Request Limiting Instruction

As an alternative, Davis argues that trial counsel was ineffective in failing to request an instruction limiting the use of the "bad acts" evidence.  The Court of Appeals rejected Davis's argument, holding:

> Because CALJIC 2.50 was not requested, both defendants assert their trial attorneys were incompetent.  However, we agree with the People that the record does not foreclose a legitimate tactical reason.  "It may well be that trial counsel did not want such an instruction, believing that it would emphasize the [unfavorable evidence].  Since the record is silent on counsel's reasoning and a satisfactory explanation exists for not making the request, the case must be affirmed on appeal." (*People v. Bonilla* (1985) 168 Cal.App.3d 201, 206).[95]

As noted above in the discussion of ground two subpart B, the Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of

---

[92] *See Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

[93] *United States v. Multi-Management, Inc.*, 743 F.2d 1359, 1364 (9th Cir. 1984).

[94] *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

[95] Lodged Doc. 4 at 62-63 (alteration in original).

counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[96]

> Under § 2254(d), a habeas court must determine what arguments or theories supported *or, as here, could have supported, the state court's decision*; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[97]

Davis bears the burden of proving that counsel's trial strategy was deficient.  "[Davis] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[98]  "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[99]  On the facts before it, this Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[100]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Davis's case within the scope of

---

[96] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

[97] *Id.* at 786 (emphasis added).

[98] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[99] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

[100] 28 U.S.C. § 2254(d).

*Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable. Davis has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*. Davis is not entitled to relief under part B of his fifth ground.

Ground 6:  Insufficiency of Evidence for Firearm Enhancement

The jury found as true the use of a firearm enhancement under California Penal Code § 12022.53(d), which provides:

> (d)  Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 12034, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life.

Davis argues that, because the forensic evidence established that the bullet that caused the great bodily injury was fired by co-defendant Munoz, the evidence was insufficient to support a true finding on the enhancement as to him.  The California Court of Appeal rejected Davis's argument, holding:

> 2. Davis's Claim
>
> As stated, the enhancement applies to a person who "personally and intentionally discharges a firearm and proximately causes great bodily injury." (Pen. Code § 12022.53, subd. (d).) Davis claims because Munoz fired the bullet found in Chappell's brain, Davis did not "proximately cause" great bodily harm. We disagree.
>
> Before addressing this issue we observe that the People originally believed Chappell had been shot with Davis's nine-millimeter Glock, and in their opening statement argued Davis *personally* shot Chappell. But the criminalist testified that the bullet recovered from Chappell's brain was a .45-caliber bullet, thus impliedly showing that *Munoz* personally shot Chappell. For the purposes of this appeal, we accept Davis's premise that Munoz actually shot Chappell.

By its terms the statute does not require that a person *personally* cause injury, but only that he or she *proximately* cause injury. The Legislature knows the difference between these two concepts, in the context of enhancements. (See *People v. Cole* (1982) 31 Cal.3d 568, 570-79 [only one who 'personally inflicts" injury is subject to § 12022.7 enhancement].)

> "Section 12022.53(d) requires that the defendant 'intentionally and *personally* discharged a firearm,' but only that he 'proximately caused' great bodily injury or death. . . . The statute states nothing else that defendant must *personally* do . Proximately causing and personally inflicting harm are two different things. The Legislature is aware of that difference." (*Bland, supra*, 28 Cal.4th at p. 336.)

The jury was instructed (CALJIC No. 17.19.5):

> "A proximate cause of great bodily injury is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury and without which the great bodily injury would not have occurred.

> "The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true."

Davis concedes this is a correct statement of the law applicable to this case. The People argue Davis's act of firing his gun met this standard because by assisting in trapping the victim and by firing the shots, he helped set in motion the chain of events leading to Chappell's shooting. We agree.

The California Supreme Court has held that this enhancement "does not require that the defendant fire a bullet that directly inflicts the harm. The enhancement applies so long as defendant's personal discharge of a firearm was a proximate. i.e., a substantial, factor contributing to the result." (*Bland, supra*, 28 Cal.4th at p. 338; see *People v. Palmer* (2005) 133 Cal.App.4th 1141 [Palmer fired at a peace officer who dove for cover and thereby broke his ankle, enhancement upheld].)

> "A person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet. For example, in *People v. Sanchez* [(2001)] 26 Cal.4th 834, two persons engaged in a gun battle, killing an innocent bystander. Who fired the fatal bullet, and thus who personally inflicted the harm, was unknown, but we held that the jury could find that *both* gunmen proximately caused the death." [Citation.] The same is true here. If defendant did not fire the bullets that hit the victims, he did not *personally inflict*, but he may have *proximately caused*, the harm. (*Bland, supra*, 28 Cal.4th at pp. 337-338.)

The facts before Davis's jury fit within the *Bland* quotation. Munoz and Davis were part of a team sent to retaliate against the "bothers" who "jumped" Hernandez's nephews. When Chappell objected to being cut-off in traffic, the two SUV's driven by the team members trapped his car, then Davis and Munoz got out (either from the same SUV or one from each) and used a gun to fire into Chappell's car. The jury could rationally conclude that Davis helped set in motion the chain of

28

events leading to Chappell's shooting, that Davis's act of firing *his* gum was a "substantial" factor contributing to the shooting by Chappell  of Munoz [*sic*].

* * * *

[. . . .]  Both defendants in this case participated in trapping Chappell' car and both fired pistols.  Even though the evidence may show that Davis did not actually shoot Chappell, his act of firing at Chappell's car was a contributing *proximate* cause of the harm and therefore the evidence supports the enhancement.[101]

In this case, there was no dispute over the facts.  The dispute is whether the undisputed facts constitute a violation of a state statute.  Distilled to its essence, Davis's argument is in reality not that the evidence is insufficient, but that the California courts have misinterpreted the requirements of the California statute, i.e., that if properly interpreted and applied, the statute requires the defendant to have fired the gun that caused the serious bodily injury.  It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[102]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[103]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[104]  A determination of state law by a state intermediate appellate court is also binding in a federal

---

[101] Lodged Doc. 4 at 72-76.

[102] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[103] *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979).

[104] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. Am. Tel.& Tel Co.,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

habeas action.[105]  This is especially true where, as here, the highest court in the state has denied

review of the lower court's decision.[106]  "Federal courts hold no supervisory authority over state

judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[107]

Davis presents merely a question of state law beyond the purview of this Court in a federal

habeas petition, not one of federal constitutional dimension.[108]  Thus, Davis is not entitled to

relief under his sixth ground.

Ground 7:  "Kill-Zone" Instruction

The trial court gave the following jury instruction (CALJIC No. 8.66.1):

> A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk.  This zone of risk is termed the 'kill zone.'  The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity, either as a primary target or as someone within a 'kill zone' or zone of risk is an issue to be decided by you.[109]

---

[105] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that state appellate court's determination of state law is binding and must be given deference).

[106] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

[107] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam); *see Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several states." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[108] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

[109] Lodged Doc. 4 at 68.

Davis contends that, because there was no factual support for it, the giving of this instruction violated his right to due process and a fair trial. Davis argues that the jury could have interpreted CALJIC 8.66.1 in a manner that would have permitted the jury to find him guilty of attempted murder without having specifically having had the intent to kill the victim. The California Court of Appeal disagreed, holding:

> Davis argues as follows:
> "CALJIC No. 8.66.1 was inapplicable because the prosecution did not rely on the zone of kill to hold [Davis] liable for other attempted murders. The instruction was without evidentiary support because that instruction only applies when there are, for example, multiple counts of attempted murder, but only one intended target, and the prosecution seeks to hold the defendant liable for the attempted murder of non-targeted individuals on a concurrent intent to kill theory because the non-targeted individuals are in the zone of kill."
>
> Although the People claim the target could have been Landers, thus providing a basis for the instruction, assuming Davis is correct, he has failed to demonstrate prejudice. If, as Davis asserts, no substantial evidence supported the factual predicates for liability on a zone of kill theory, as stated in the instruction given, we would only reverse "if the record affirmatively demonstrates there was prejudice, that is, if it shows that the jury did in fact rely on the [factually] unsupported ground." (*People v. Guiton* (1993) 5 Cal.4th 1116, 1129 (*Guiton*).)
>
> Davis claims the giving of a factually unsupported instruction implicates federal due process and therefore is reversible unless the error is harmless beyond a reasonable doubt. Not so. (See *Guiton, supra,* 4 Cal.4th at pp. 1129-1130.) Instead, we must affirm "unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory." (*Id.* at p. 1130.) The record does not demonstrate any such probability.
>
> Davis claims the instruction undermined the instructions on intent to kill and the jury may have used a transferred intent theory to convict. This is not correct, because the kill-zone instruction, far from altering intent to kill principles, incorporated those principles explicitly, by stating that a person who intends to kill a target may have a concurrent intent to kill all who are in the zone of danger. Davis does not explain how this instruction would reach back and alter the intent to kill definition or allow use of a transferred intent theory. Nor was the instruction, of itself, inflammatory.
>
> Indeed, the zone of kill principle is not "a legal doctrine . . . as is the doctrine of transferred intent. Rather, it is simply a reasonable inference the jury may draw in a given case: a primary intent to kill a specific target does not rule out a concurrent

intent to kill others." (*People v. Bland* (2002) 28 Cal.4th 313, 331, fn. 6 (*Bland*).) The instruction told the jury it could, but did not have to, find it "reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity." (CALJIC No. 8.66.1.)

It is not reasonably likely that the jury would misapply the instruction in the manner posited, that is, that the instruction impaired the instructions on intent to kill. (*People v. Frye* (1998) 18 Cal.4th 894, 957; see *People v. Campos* (2007) 156 Cal.App.4th 1228, 1241-1243.)

We conclude any error was harmless in this case.[110]

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[111]  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[112]  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.[113]  It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions and the trial record as a whole.[114]  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate

---

[110] Lodged Doc. 4 at 68-70.

[111] *Boyde v. California,* 494 U.S. 370, 380 (1990).

[112] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[113] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) ("This accords with the almost invariable assumption of the law that jurors follow their instructions."); *see Franklin,* 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

[114] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

"fundamental fairness" is very narrowly drawn.[115]  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[116]

Immediately preceding the giving of CALJIC 8.66.1, the trial court instructed the jury with CALJIC 8.66, which provides in relevant part:  "In order to prove attempted murder, each of the following elements must be proved: [¶] . . .; [¶] 2. The person committing the act harbored malice aforethought, namely, a specific intent to kill unlawfully another human being."[117]  As the California Court of Appeal noted, CALJIC 8.66.1 states a permissive inference, not a legal doctrine.  A permissive inference requires a rational connection between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is more likely than not to flow from the former.[118]  A permissive inference leaves the trier of fact free to credit or reject the inference and the party challenging it must demonstrate its invalidity as applied to him.[119]  Because Davis has failed to explain how CALJIC 8.66.1 somehow dilutes or overrides the immediately preceding instruction that specifically instructed that a specific intent to unlawfully kill another was required, he has fallen far short of meeting that requirement.

This Court cannot say that the California Court of Appeal unreasonably applied federal law when it found that there was no reasonable likelihood that the jury was misled by the "kill-zone" instruction.  Davis is not entitled to relief under his seventh ground.

---

[115] *Id*. at 72-73.

[116] *Id*.

[117] Clerk's Transcript on Appeal, Vol. 3 at 805.

[118] *See Cnty. Court of Ulster Cnty., N. Y. v. Allen*, 442 U.S. 140, 157 (1979).

[119] *Id*.

## V.  CONCLUSION AND ORDER

Davis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[120]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[121]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 7, 2012.

　　　　　　　　　　　　　　　/s/ James K. Singleton, Jr.
　　　　　　　　　　　　　　　JAMES K. SINGLETON, JR.
　　　　　　　　　　　　　　　United States District Judge

---

[120] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705-06 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude  the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[121] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.